UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANDON HUGHES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE,<br><br>Defendant. | Case No. 1:22-cv-10743-JLR |

NATIONAL FOOTBALL LEAGUE'S REPLY MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION TO DISMISS</u>

**VINSON & ELKINS L.L.P.**

Matthew X. Etchemendy\*
2200 Pennsylvania Avenue, NW
Suite 500 West
Washington, DC 20037
Telephone: (202) 639-6740
Facsimile: (202) 879-8940
metchemendy@velaw.com

Hilary L. Preston
Marisa Antonelli
1114 Avenue of Americas
32nd Floor
New York, NY 10036
Telephone: (212) 237-0000
Facsimile: (212) 237-0100
hpreston@velaw.com
mantonelli@velaw.com

*Counsel for National Football League*

**\****Admitted pro hac vice*

# TABLE OF CONTENTS

                                                                                                                    **Page**

TABLE OF AUTHORITIES ................................................................................................ ii
PRELIMINARY STATEMENT ........................................................................................... 1
ARGUMENT ........................................................................................................................ 1
**I.** Mr. Hughes Lacks Standing Under *TransUnion*. ................................................. 1
**II.** Mr. Hughes Fails to Allege Facts to Support a VPPA Claim. ............................. 5
    **A.** Mr. Hughes Is Not a VPPA "Consumer." ................................................ 5
    **B.** The NFL Did Not "Knowingly Disclose" Mr. Hughes's PII ................... 6
**III.** The Complaint's Class Allegations Should Be Dismissed. ................................. 8
CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambrose v. Boston Globe Media Partners LLC*,
   No. 21-10810, 2022 WL 4329373 (D. Mass. Sept. 19, 2022) ....................................... 5

*Austin-Spearman v. AMC Network Ent. LLC*,
   98 F. Supp. 3d 662 (S.D.N.Y. 2015) ........................................................................... 6

*Belozerov v. Gannett Co.*,
   No. 22-cv-10838, 2022 WL 17832185 (D. Mass. Dec. 20, 2022) ............................. 5

*Czarnionka v. Epoch Times Association, Inc.*,
   No. 22-cv-6348, 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ............................. 7

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ...................................................................................... 2

*Ellis v. Cartoon Network, Inc.*,
   803 F.3d 1251 (11th Cir. 2015) .................................................................................. 6

*Feldman v. Star Tribune Media Co.*,
   No. 22-cv-1731, 2023 WL 2388381 (D. Minn. Mar. 7, 2023) .................................. 3

*Fischer v. Instant Checkmate LLC*,
   No. 19-cv-4892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ................................... 9

*Glick v. CMRE Fin. Servs., Inc.*,
   No. 21-cv-7456, 2022 WL 2475690 (S.D.N.Y. July 6, 2022) ............................. 2, 4

*Harris v. PBS*,
   No. 1:22-cv-2456, 2023 WL 2583118 (N.D. Ga. Mar. 20, 2023) ......................... 5, 7

*Horton v. Dow Jones & Co.*,
   804 F. App'x 81 (2d Cir. 2020) ............................................................................. 9, 10

*Howell v. N.Y. Post Co.*,
   612 N.E.2d 699 (N.Y. 1993) ...................................................................................... 3

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
   48 F.4th 1236 (11th Cir. 2022) .............................................................................. 2, 4

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016) ....................................................................................... 2

*Lebakken v. WebMD, LLC*,
   No. 22-cv-644, 2022 WL 16716151 (N.D. Ga. Nov. 4, 2022) ............................. 5, 6

*Maddox v. Bank of N.Y. Mellon Tr. Co.*,
   19 F.4th 58 (2d Cir. 2021) .......................................................................................... 2

*Martin v. Meredith Corp.*,
   No. 22-cv-4776, 2023 WL 2118074 (S.D.N.Y. Feb. 17, 2023) ............................ 3, 7

*Meyer v. Kalanick*,
    185 F. Supp. 3d 448 (S.D.N.Y. 2016) ................................................................... 9, 10

*Mollett v. Netflix, Inc.*,
    795 F.3d 1062 (9th Cir. 2015) ................................................................................... 6

*Mount v. PulsePoint, Inc.*,
    684 F. App'x 32 (2d Cir. 2017) ................................................................................. 3

*Nader v. Gen. Motors Corp.*,
    255 N.E.2d 765 (N.Y. 1970) ...................................................................................... 3

*Naranjo v. Nick's Mgmt., Inc.*,
    No. 21-cv-2883, 2023 WL 416313 (N.D. Tex. Jan. 25, 2023) ................................ 10

*Perry v. Cable News Network, Inc.*,
    854 F.3d 1336 (11th Cir. 2017) ................................................................................. 2

*Shields v. Professional Bureau of Collections of Maryland, Inc.*,
    55 F.4th 823 (10th Cir. 2022) ................................................................................ 2, 4

*Sputz v. Alltran Financial, LP*,
    No. 21-cv-4663, 2021 WL 5772033 (S.D.N.Y. Dec. 5, 2021) ............................... 2, 4

*Sterk v. Redbox Automated Retail, LLC*,
    770 F.3d 618 (7th Cir. 2014) ..................................................................................... 2

*TechnoMarine SA v. Giftports, Inc.*,
    758 F.3d 493 (2d Cir. 2014) .................................................................................... 10

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ..................................................................................... 1, 2, 3

*Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*,
    957 F.3d 337 (2d Cir. 2020) ...................................................................................... 8

*Vine v. PLS Financial Services, Inc.*,
    807 F. App'x 320 (5th Cir. 2020) ........................................................................ 9, 10

*Warren v. Stop & Shop Supermarket, LLC*,
    592 F. Supp. 3d 268 (S.D.N.Y. 2022) ..................................................................... 10

**Statutes**

18 U.S.C. § 2710(b)(1) ...................................................................................................... 6

**Other Authorities**

David A. Elder, *Privacy Torts* § 2:12 (Dec. 2022 Update) ............................................... 5

Restatement (Second) of Torts § 652B & cmt. c (Am. Law Inst. Mar. 2023 Update) ....... 3

William L. Prosser, *Privacy*, 48 Cal. L. Rev. 383 (1960) ................................................. 3

**PRELIMINARY STATEMENT**

Mr. Hughes's opposition (the "Opposition" or "Opp.") fails to meaningfully address the various fatal defects requiring dismissal of his Complaint.[1] Relying primarily on summary (and at times incorrect) citations to other VPPA cases examining other VPPA complaints, the Opposition does not (because it cannot) identify facts in Mr. Hughes's own pleading demonstrating an injury-in-fact sufficient to confer Article III standing, or explain how his interactions with free video content on the NFL's website and the alleged transfer of information from his own browser to Facebook satisfy the VPPA's statutory requirements. Because Mr. Hughes fails to meet his burden to plead an injury-in-fact or allege facts meeting the basic elements of his VPPA claim, the Complaint should be dismissed. At all events, Mr. Hughes's class claims must be dismissed because Mr. Hughes does not dispute that he agreed to the NFL's Terms and Conditions (the "NFL Terms"), which bar class action claims.

**ARGUMENT**

**I.    Mr. Hughes Lacks Standing Under *TransUnion*.**

"As the party invoking federal jurisdiction," Mr. Hughes bears "the burden of demonstrating" that he suffered an "injury in fact"—not a mere "injury in law"—sufficient to establish Article III standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205-07 (2021). Mr. Hughes cannot do so. All Mr. Hughes alleges is that due in part to the NFL's implementation of Facebook Pixel, *his browser* transmitted true, non-reputationally-harmful information about his video browsing on NFL.com to a Facebook server. Of course, the transmission of this information to Facebook by Mr. Hughes's browser also required Facebook's cookies to have been installed on his browser, which Mr. Hughes was on notice of and consented to as a Facebook account holder.

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the NFL's memorandum of law in support of its motion to dismiss (the "Motion" or "Mot.").

Those alleged facts fall short of an injury-in-fact. *TransUnion* and its progeny establish as much. To be clear: although Mr. Hughes attempts to obfuscate the point with string citations to outdated pre-*TransUnion* cases,[2] *TransUnion* requires Mr. Hughes to clearly identify a traditional historical or common-law cause of action redressing intangible harms with a "close relationship" to those alleged here, 141 S. Ct. at 2204—i.e., disclosure of true, non-misleading, non-reputationally-damaging information to a single company, with which Mr. Hughes holds an account governed by its own terms and conditions. He cannot do so.

Any analogy to the tort of public disclosure of private facts would fail, most obviously due to the lack of "publicity," as explained in *Shields v. Professional Bureau of Collections of Maryland, Inc.*, 55 F.4th 823 (10th Cir. 2022), *Hunstein v. Preferred Collection & Management Services, Inc.*, 48 F.4th 1236 (11th Cir. 2022) (en banc), *Glick v. CMRE Financial Services, Inc.*, No. 21-cv-7456, 2022 WL 2475690 (S.D.N.Y. July 6, 2022), and *Sputz v. Alltran Financial, LP*, No. 21-cv-4663, 2021 WL 5772033 (S.D.N.Y. Dec. 5, 2021). And any analogy to defamation would likewise fail because the disclosed information here was neither false nor misleading and, in any event, the "disclosures" alleged fall below the level of "publication" because no one is alleged to have even read them. *See TransUnion*, 141 S. Ct. at 2208-09, 2210 n.6.

Mr. Hughes invokes *Feldman v. Star Tribune Media Co.*, a District of Minnesota decision

---

[2] The pre-*TransUnion* cases Mr. Hughes cites demonstrably relied on outdated standards. Some invoked a distinction between "substantive" and "procedural" statutory violations that *TransUnion* eliminated. *Compare Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983-84 (9th Cir. 2017) (invoking "substantive"/"procedural" distinction), *with Maddox v. Bank of N.Y. Mellon Tr. Co.*, 19 F.4th 58, 64 (2d Cir. 2021) (*TransUnion* "eliminated the significance" of "substantive"/"procedural" distinction for standing purposes). Others relied on the notion—equally discredited under *TransUnion*—that Congress can simply define injuries into existence. *Compare Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) (relying on notion that Congress has "power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute" (internal quotation marks omitted)), *and In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 273-74 (3d Cir. 2016) (similar), *with Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) (post-*TransUnion*, a plaintiff must show "harm beyond the statutory violation itself"). As for *Perry v. Cable News Network, Inc.*, 854 F.3d 1336 (11th Cir. 2017), that case was effectively overruled by the *en banc* decision in *Hunstein*.

that analogized a plaintiff's VPPA claims to a different common-law tort: intrusion upon seclusion. No. 22-cv-1731, 2023 WL 2388381, at *4 (D. Minn. Mar. 7, 2023).[3] Intrusion upon seclusion—a relatively new tort recognized by some states (though not New York, *see Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 703 (N.Y. 1993))—is an even *weaker* analogue for Mr. Hughes's VPPA claim. The *sine qua non* of intrusion upon seclusion is a highly offensive *breach*—an "intrusion"—into a plaintiff's "private place" or "seclusion," with the most archetypical examples being highly offensive spying or harassment. Restatement (Second) of Torts § 652B & cmt. c (Am. Law Inst. Mar. 2023 Update); William L. Prosser, *Privacy*, 48 Cal. L. Rev. 383, 389-91 (1960) (tort requires "*prying* or *intrusion*" (emphasis added)). For example, illicitly *gathering/obtaining* private information, such as "opening a plaintiff's private and personal mail," *Feldman*, 2023 WL 2388381, at *4 (alterations omitted)), can be an actionable intrusion. *See, e.g.*, *Nader v. Gen. Motors Corp.*, 255 N.E.2d 765, 769-70 (N.Y. 1970) (intrusion cases "generally involve[] the *gathering* of private facts or information through improper means" (emphasis added)); *cf. Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 34-35 (2d Cir. 2017) (summary order) (unauthorized "*gather[ing]*" and "*accessing*" of private information constitutes harm analogous to intrusion upon seclusion (emphasis added)). But no such intrusion, gathering or accessing by the NFL is alleged here; the harm allegedly perpetrated by the NFL is the *disclosure* of PII (which, as already noted, the NFL itself never even had access to, *see* Mot. 20-21), not improper spying or "prying" into matters the NFL had no lawful access to. The NFL never "intruded" into any private

---

[3] Mr. Hughes concedes that *Martin v. Meredith Corp.*, No. 22-cv-4776, 2023 WL 2118074 (S.D.N.Y. Feb. 17, 2023), contains "little" pertinent discussion. Opp. 8. As noted, that is because the *Martin* court was not presented with the arguments the NFL has advanced. *See* Mot. 15-16. Mr. Hughes asserts that the *Martin* defendants did raise those arguments, but a review of the motion to dismiss makes plain they did not; their passing quotation to the relevant text of *TransUnion* was made in the course of *declining* to argue, as the NFL does here, that the bare allegation of a VPPA violation falls short of *TransUnion*'s standards. *See* Mem. in Supp. Defs.' Mot. to Dismiss at 9-13, *Martin*, No. 22-cv-4776 (S.D.N.Y. Sept. 16, 2022), ECF No. 37.

information. Moreover, the alleged disclosure was made to a single company, Facebook, with which Mr. Hughes has an account and which has disclosed to Mr. Hughes the fact that it tracks his browsing activity on third party sites in its own terms and conditions.

Notably, the Tenth Circuit in *Shields*, confronted with materially indistinguishable harm allegations, rejected an analogy to intrusion upon seclusion. The court explained that, although the plaintiff alleged statutorily unlawful disclosure, "she never alleged [the defendant] intruded her 'private solitude.'" 55 F.4th at 829. So too here, where Mr. Hughes posits that he has Article III standing because the NFL intangibly harmed him through allegedly unlawful *disclosures* to Facebook; Mr. Hughes does not allege the NFL intruded into his private solitude. *See supra* pp. 3-4. A potential intrusion-upon-seclusion analogy was also briefed in *Hunstein*, and the court nonetheless held that public disclosure of private facts was the "*only* plausible historical comparator" to a statutory unlawful-disclosure claim. 48 F.4th at 1245 (emphasis added); *see* Def.'s En Banc Br. at 12-14, 21-23, 33-39, *Hunstein*, No. 19-14434 (11th Cir. Jan. 18, 2022), 2022 WL 180291, ECF No. 162 (briefing analogy to intrusion upon seclusion). As in *Hunstein*, *Shields*, *Glick*, and *Sputz*, this case involves the NFL's alleged disclosure of true information to the server of a single third-party company; there are no allegations that the disclosures were made to the public at large or someone likely to widely communicate it.

Moreover, as noted above, any analogy to intrusion upon seclusion here is further undermined by the fact that the alleged disclosures were made to Facebook, a company with which Mr. Hughes has a voluntary relationship governed by its own terms and conditions. Indeed, Mr. Hughes does not dispute that he consented to Facebook accessing the information he alleges the NFL disclosed here, via Facebook's privacy policies, which plainly disclose the cookie-based tracking at issue here. *See* Mot. 5-6, 13-14. He cannot plausibly claim an intrusion-upon-seclusion

4

"harm" based on the very tracking to which he consented. *See, e.g.*, David A. Elder, *Privacy Torts* § 2:12 (Dec. 2022 Update) (consent, "whether express or implied, negates the existence of the [intrusion] tort"). Mr. Hughes does not dispute the clarity of these policies, nor does he dispute that he agreed to them. (Nor, for that matter, does he dispute that he agreed to the NFL's Privacy Policy *as well*; that policy, too, discloses that Facebook may collect browsing information, *see* Mot. 8.) That tacit concession is fatal, particularly given that Mr. Hughes, not the NFL, bears the burden on standing. Disclosures and "intrusions" to which a plaintiff consented have never provided a traditional basis for a lawsuit in American courts. *See* Mot. 13-14. On the contrary, consent is an absolute bar to recovery under all traditional privacy torts, including intrusion upon seclusion. *See id.* (citing sources). Mr. Hughes plainly lacks standing to pursue his VPPA claim.

## II. Mr. Hughes Fails to Allege Facts to Support a VPPA Claim.

### A. Mr. Hughes Is Not a VPPA "Consumer."

As the NFL has explained, Mr. Hughes's argument that he is a "consumer" under the VPPA because he signed up for a free email newsletter with no alleged connection to the freely accessible video content on NFL.com ignores the text, history, and purpose of the statute. Mot. 16-20. Mr. Hughes's sole response is to cite two recent decisions from the Northern District of Georgia, *Harris v. PBS*, No. 1:22-cv-2456, 2023 WL 2583118 (N.D. Ga. Mar. 20, 2023), and *Lebakken v. WebMD, LLC*, No. 22-cv-644, 2022 WL 16716151 (N.D. Ga. Nov. 4, 2022).[4] But this Court is not bound by those decisions and, insofar as *Harris* and *Lebakken* support Mr. Hughes's position, this Court should decline to follow them. *Lebakken*, without any substantive analysis of the

---

[4] Mr. Hughes also cites *Belozerov v. Gannett Co.*, No. 22-cv-10838, 2022 WL 17832185, at *3 (D. Mass. Dec. 20, 2022), and *Ambrose v. Boston Globe Media Partners LLC*, No. 21-10810, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022). *Belozerov* simply held that *payment* was unnecessary to establish "consumer" status; it did not address whether signing up for a newsletter with no connection to the video content at issue suffices to establish this element of a VPPA claim. *Boston Globe* likewise said nothing pertinent to that issue.

5

VPPA's text, purpose, or history, held that signing up for a free WebMD account was sufficient to allege "subscriber" status under the VPPA; and *Harris* relied on *Lebakken* in coming to a similar conclusion. The holdings of both *Lebakken* and *Harris* are incompatible with the Eleventh Circuit's sound reasoning (aligned with Judge Buchwald's observations in *Austin-Spearman*) that Congress never intended the VPPA to cover casual consumption of free video content untethered to a meaningful business relationship with the defendant. *See* Mot. 18-20; *Ellis v. Cartoon Network, Inc.,* 803 F.3d 1251, 1256-57 (11th Cir. 2015); *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015). To be clear, Mr. Hughes does not allege that he rented, purchased or subscribed to any video content on NFL.com. Nor does he allege that Facebook's tracking of his browsing activity is dependent on, or has any relationship to, his having signed up to receive a newsletter from the NFL; indeed, the very same tracking would be done for Facebook users browsing on NFL.com (or any other website that installed Facebook Pixel) whether or not they signed up for a newsletter. Mot. 5, 19-20. The VPPA is intended to protect purchasers, renters or subscribers of video tape service providers; it is not intended to arbitrarily give protections to casual website visitors based on irrelevant factors such as signing up for free emails with no relationship to the video content at issue or the alleged disclosures.

### B. The NFL Did Not "Knowingly Disclose" Mr. Hughes's PII.

Mr. Hughes also fails to plead that the NFL "knowingly disclose[d]" his PII. 18 U.S.C. § 2710(b)(1). The VPPA does not prohibit technologies that may—depending also on other acts undertaken or consented to by plaintiffs—*cause* plaintiffs' browsers to disclose their PII to a third party. Congress knows how to prohibit "causing" information "to be disclosed"; in the VPPA, it did not. *See* Mot. 22. Expanding the VPPA beyond its textual limits, as Mr. Hughes demands, would thus efface "both the letter and the spirit of the law." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066-67 (9th Cir. 2015). Mr. Hughes offers no response to this clear textual point.

Instead, Mr. Hughes simply string-cites decisions in other VPPA cases finding that other plaintiffs' complaints adequately alleged the defendant disclosed PII. Opp. 11. But none of the cited cases addressed the textual points explained above and in the Motion, and Mr. Hughes does not defend the faulty reasoning in those cases. *Czarnionka v. Epoch Times Association, Inc.*, No. 22-cv-6348, 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022), disregarded the VPPA's text and instead relied on a strained metaphor about "digital door[s]" that stretches the scope of the VPPA well beyond the statute's plain language. *See* Mot. 21 n.10. Similarly, *Harris*, 2023 WL 2583118, at *5, offered no explanation for its view that it was enough for a defendant to play a "role" in "caus[ing]" a disclosure—which, as explained, is not sufficient under the VPPA's text. The reasoning in *Harris* also ignores plaintiff's own role in (and ability to control or prevent) such disclosure as a result of his relationship with Facebook, and his agreement to Facebook's terms and cookie placement. Mr. Hughes's other cited cases elected not to grapple with these issues, citing factual disputes. But there is no dispute here about the key facts: (1) Mr. Hughes's browser, not the NFL, transmits any PII, and (2) the NFL never even had access to Mr. Hughes's FID (and thus the PII at issue), and thus never "disclosed" that PII to Facebook. Mot. 20-21. As the court did in *Martin*, this Court should dismiss the Complaint because "the complaint itself shows that the [NFL] do[es] not disclose" PII by its use of Facebook Pixel or otherwise. 2023 WL 2118074, at *3. Mr. Hughes tries to distinguish *Martin* by arguing that his complaint contains more specific allegations, Opp. 4 n.3, but the technology is the same. Regardless, *Martin*'s observations about the threadbare nature of the data Facebook receives are not necessary to, and could only further confirm, what is already apparent: the NFL did not disclose Mr. Hughes's PII—which the NFL *never possessed*, because it lacked any access to Mr. Hughes's FID, the only personal identifier at issue. As noted in the Motion, the most that is alleged is that the NFL *caused* a disclosure, but

under the plain language of the VPPA that is not enough to allege a claim. Mot. 21-22.

## III. The Complaint's Class Allegations Should Be Dismissed.

Mr. Hughes's class claims must be dismissed because Mr. Hughes agreed to the NFL's Terms, which contain an express class action waiver. Mot. 23-24. Mr. Hughes does not dispute that he agreed to the NFL Terms, nor does he suggest that the waiver is unenforceable. Instead, he argues that the waiver applies only to class arbitrations. Opp. 13-18. That is not correct.

Section 19 of the NFL Terms is titled "Choice of Law, Arbitration, *and* Class Action Waiver." Preston Decl. ¶ 5, Ex. C at 18 (emphasis added).[5] As the title explains, the section contains several independent provisions, including *both* an arbitration agreement *and* a class action waiver. The class-action waiver is contained in its own separate paragraph. By its terms, this waiver applies to "any proceedings to . . . litigate," and any "class action." *Id.* While Section 19 contains an arbitration agreement, the class waiver paragraph specifically refers to any and all "arbitrations *or proceedings*." *Id.* (emphasis added). This language explicitly recognizes that the class action waiver applies, whether or not a dispute is brought in arbitration. Mr. Hughes's argument to the contrary would impermissibly render portions of the waiver's text meaningless— notably, the words "or proceedings." *See Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 957 F.3d 337, 344 (2d Cir. 2020).

Mr. Hughes cites cases in which courts determined that class action waivers were applicable only to arbitrations. But the text at issue in those cases was different from the NFL Terms. In *Meyer v. Kalanick*, a single "Dispute Resolution" paragraph stated that all disputes must arbitrated, and that "You acknowledge and agree that you and Company are each waiving the right

---

[5] The discussion herein, like Mr. Hughes's Opposition, focuses on the version of the NFL Terms in effect when Mr. Hughes alleges he registered with NFL.com. *Cf.* Mot. 8 n.3. However, the same substantive considerations apply to the currently in-effect Terms. *See id.* (linking current Terms).

8

to a trial by jury or to participate as a plaintiff or class User in any purported class action or representative proceeding." 185 F. Supp. 3d 448, 451 (S.D.N.Y. 2016). In context (and in dicta, given that the court found the agreement unconscionable under California law), the court read this language as referring only to arbitrations. *Id.* at 453-55. While the NFL Terms certainly contain text similar to that in *Meyer* in the **second** paragraph of Section 19 (the arbitration agreement), *see* Preston Decl. ¶ 5, Ex. C at 18, unlike the agreement at issue in *Meyer*, Section 19 contains an *additional* and independent class action waiver in the **third** paragraph. Mr. Hughes's construction would render the third paragraph a meaningless copy of the explanation in the second paragraph—as well as reduce key parts of the third paragraph itself to surplusage.

Mr. Hughes's reliance on *Fischer v. Instant Checkmate LLC*, No. 19-cv-4892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022), is similarly unavailing. The waiver in that case was limited by its terms to "any *such* claims," where the phrase "such" limited the waiver to the arbitration claims referenced in the preceding sentences. *Id.* at *4 (emphasis added). In contrast, the waiver here does not reference any previous sentence, applies to "*any* proceedings to resolve or *litigate*" without limitation, and specifically references "arbitrations *or* proceedings." Preston Decl. ¶ 5, Ex. C at 18 (emphasis added). As for *Vine v. PLS Financial Services, Inc.*, 807 F. App'x 320 (5th Cir. 2020), the class waiver in that case was part of a provision titled "Waiver of Jury Trial and Arbitration Provision," and was expressly framed as a consequence of "entering into this *Arbitration Provision*." *Id.* at 328 (emphasis added). Again, the same is not true here, where the title of Section 19 explicitly refers to *both* "Arbitration" and "Class Action Waiver" separately, and contains an independent class waiver provision in its own paragraph.

*Horton v. Dow Jones & Co.*, 804 F. App'x 81 (2d Cir. 2020) (summary order), dictates a ruling in the NFL's favor. In *Horton*, the Second Circuit rejected an argument that a class waiver

9

should be restricted to arbitrations. Even though the waiver appeared in a section titled "Agreement to Arbitrate," it referred to "class arbitrations *and* class actions," text that would improperly be rendered meaningless if the waiver were limited to arbitrations. *Id.* at 84 (emphasis added). So too here, where the class waiver covers all "proceedings" without limit and specifically refers to arbitrations *or* proceedings.[6] Mr. Hughes weakly notes that in *Horton*, "the Defendant sought" (unsuccessfully) "to compel arbitration." Opp. 17. But that played no role in the court's analysis. The Court should dismiss Mr. Hughes's class claims with prejudice.[7]

## CONCLUSION

For the foregoing reasons and those set forth in the NFL's Motion, the Court should dismiss the Complaint in its entirety.

Dated: April 6, 2023

Respectfully submitted,

**VINSON & ELKINS L.L.P.**

By: */s/ Hilary L. Preston*

| | |
|---|---|
| Matthew X. Etchemendy* | Hilary L. Preston |
| 2200 Pennsylvania Avenue, NW | Marisa Antonelli |
| Suite 500 West | 1114 Avenue of Americas |
| Washington, DC 20037 | 32nd Floor |
| Telephone: (202) 639-6740 | New York, NY 10036 |
| Facsimile: (202) 879-8940 | Telephone: (212) 237-0000 |
| metchemendy@velaw.com | Facsimile: (212) 237-0100 |
| | hpreston@velaw.com |
| *Admitted pro hac vice | mantonelli@velaw.com |

*Counsel for National Football League*

---

[6] The Northern District of Texas also expressly distinguished *Meyer* and *Vine* on facts analogous to this case, holding that a class-action waiver in the same section as an arbitration agreement was independently enforceable. *Naranjo v. Nick's Mgmt., Inc.*, No. 21-cv-2883, 2023 WL 416313, at *8-9 (N.D. Tex. Jan. 25, 2023) (applying Texas law).

[7] The Court should deny Mr. Hughes's belated request to amend his complaint. Opp. 18 n.10. Mr. Hughes has already amended his complaint once, and he provides no explanation for how further amendment would cure the deficiencies identified in the Motion. *See Warren v. Stop & Shop Supermarket, LLC*, 592 F. Supp. 3d 268, 289 (S.D.N.Y. 2022) (denying leave to amend where "Plaintiff requested leave . . . within the last sentence of her response in opposition," and did not "suggest[] that she is in possession of facts that would cure the deficiencies . . . highlighted in the instant motion") (citing *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014)).

10