# EXHIBIT B

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANDON HUGHES, *Individually and on behalf of all others similarly situated,* | |
| Plaintiff, | **Case No: 22-CV-10743** |
| v. | |
| NATIONAL FOOTBALL LEAGUE, | **JURY TRIAL REQUESTED** |
| *Defendant.* | |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Brandon Hughes, individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendant National Football League ("Defendant") for violations of the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). Plaintiff's claims arise from Defendant's practice of knowingly disclosing to a third party, Meta Platforms, Inc. ("Facebook"), data containing Plaintiff's and other digital-subscribers Class Members' (i) personally identifiable information or Facebook ID ("FID") and (ii) the computer file containing video and its corresponding URL viewed ("Video Media") (collectively, "Personal Viewing Information"). Plaintiff's allegations are made on personal knowledge as to Plaintiff and Plaintiff's own acts and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.      This is a consumer digital privacy class action complaint against National Football League, as the owner of NFL.com, for violating the VPPA by disclosing its digital subscribers' identities and Video Media to Facebook without the proper consent.

2.      The VPPA prohibits "video tape service providers," such as NFL.com, from knowingly disclosing consumers' personally identifiable information, including "information

which identifies a person as having requested or obtained specific video materials or services from a video tape provider," without express consent in a stand-alone consent form.

3.      Like other businesses with an online presence, Defendant collects and shares the personal information of visitors to its website and NFL mobile application ("App") – named simply, "NFL" – with third parties. Defendant does this through cookies, software development kits ("SDK"), and pixels. In other words, digital subscribers to NFL.com and/or the NFL App have their personal information disclosed to Defendant's third-party business partners.

4.      The Facebook pixel is a code Defendant installed on NFL.com allowing it to collect users' data. More specifically, it tracks when digital subscribers to NFL+ enter NFL.com or NFL.com's accompanying App and view Video Media. NFL.com tracks and discloses to Facebook the digital subscribers' viewed Video Media, and most notably, the digital subscribers' FID. This occurs even when the digital subscriber has not shared (nor consented to share) such information.

5.      Importantly, Defendant shares the Personal Viewing Information – *i.e.*, digital subscribers' unique FID and video content viewed – together as one data point to Facebook. Because the digital subscriber's FID uniquely identifies an individual's Facebook user account, Facebook—or any other ordinary person—can use it to quickly and easily locate, access, and view digital subscribers' corresponding Facebook profile. Put simply, the pixel allows Facebook to know what Video Media one of its users viewed on NFL.com.

6.      Thus, without telling its digital subscribers, Defendant profits handsomely from its unauthorized disclosure of its digital subscribers' Personal Viewing Information to Facebook. It does so at the expense of its digital subscribers' privacy and their statutory rights under the VPPA.

7.     Because NFL.com digital subscribers are not informed about this dissemination of their Personal Viewing Information – indeed, it is automatic and invisible – they cannot exercise reasonable judgment to defend themselves against the highly personal ways NFL.com has used and continues to use data it has about them to make money for itself.

8.     Defendant chose to disregard Plaintiff's and hundreds of thousands of other NFL.com digital subscribers' statutorily protected privacy rights by releasing their sensitive data to Facebook. Accordingly, Plaintiff brings this class action for legal and equitable remedies to redress and put a stop to Defendant's practices of intentionally disclosing its digital subscribers' Personal Viewing Information to Facebook in knowing violation of VPPA.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the claims that arise under the Video Privacy Protection Act, 18 U.S.C. § 2710.

10.    This Court also has jurisdiction under 28 U.S.C. § 1332(d) because this action is a class action in which the aggregate amount in controversy for the proposed Class (defined below) exceeds $5,000,000, and at least one member of the Class is a citizen of a state different from that of Defendant.

11.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 because Defendant does business in and is subject to personal jurisdiction in this District. Venue is also proper because a substantial part of the events or omissions giving rise to the claim occurred in or emanated from this District.

## THE PARTIES

12.    Plaintiff Brandon Hughes is an adult citizen of the State of Illinois and is domiciled in the State of Illinois. Plaintiff began a digital subscription to NFL.com email newsletters in 2020 which continues to this day. Additionally, Plaintiff subscribed to NFL+ on or

about August 2022. Plaintiff has had a Facebook account from approximately 2006 to the present. During the relevant time period he has used his NFL.com digital subscription to view Video Media through NFL.com and the NFL App. When viewing Video Media through NFL.com, Plaintiff was logged into his Facebook account. When viewing Video Media through the NFL App, Plaintiff had the Facebook mobile app also installed on his smartphone. By doing so, Plaintiff's Personal Viewing Information was disclosed to Facebook pursuant to the systematic process described herein. Plaintiff never gave Defendant express written consent to disclose his Personal Viewing Information.

13.     Defendant National Football League:
   a.   Is a private corporation and major sports league headquartered in New York, New York.
   b.   NFL.com had approximately 26 million average monthly users and over 300 million total pageviews in 2021.[1]
   c.   The National Football League had an annual revenue of approximately $11 billion in 2021.[2]
   d.   NFL.com includes a Videos section which provides a broad selection of video content.
   e.   Combined, the National Football League and NFL.com are used by numerous U.S. digital media viewers.
   f.   Through NFL.com and the App, Defendant delivers and, indeed, is in the business of delivering countless hours of video content to its digital subscribers.

**FACTUAL ALLEGATIONS**

**A.     Background of the Video Privacy Protection Act**

14.     The VPPA generally prohibits the knowing disclosure of a customer's video rental or sale records without the informed, written consent of the customer in a form "distinct and separate from any form setting forth other legal or financial obligations." Under the statute,

---

[1] *See* similarweb, NFL.com, *available at* https://www.similarweb.com/website/nfl.com/#social-media (last visited Sept. 7, 2022).

[2] *See* SP, Report: NFL posts US$$11bn in national revenue for 2021, *available at* https://www.sportspromedia.com/news/nfl-national-revenue-2021-roger-goodell/ (last visited Sept. 7, 2022).

the Court may award actual damages (but not less than liquidated damages of $2,500.00 per person), punitive damages, equitable relief, and attorney's fees.

15.     The VPPA was initially passed in 1988 for the explicit purpose of protecting the privacy of individuals' and their families' video rental, purchase and viewing data. Leading up to its enactment, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7-8 (1988).

16.     Senators at the time were particularly troubled by disclosures of records that reveal consumers' purchases and rentals of videos and other audiovisual materials. As Senator Patrick Leahy and the late Senator Paul Simon recognized, records of this nature offer "a window into our loves, likes, and dislikes," such that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599 at 7-8 (1988) (statements of Sens. Simon and Leahy, respectively).

17.     In proposing the Video and Library Privacy Protection Act (later codified as the VPPA), Senator Leahy stated that "[i]n practical terms our right to privacy protects the choice of movies that we watch with our family in our own homes. And it protects the selection of books that we choose to read." 134 Cong. Rec. S5399 (May 10, 1988). Thus, the personal nature of such information, and the need to protect it from disclosure, is the inspiration of the statute: "[t]hese activities are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and our whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people." *Id*.

18.     While these statements rang true in 1988 when the VPPA was passed, the importance of legislation like the VPPA in the modern era of data mining from online activities is more pronounced than ever before. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Leahy emphasized the point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."[3]

19.     In this case, Defendant chose to deprive Plaintiff and the Class members of that right by knowingly and systematically disclosing their Personal Viewing Information to Facebook, without providing notice to (let alone obtaining consent from) anyone, as explained herein.

**B.     NFL.com's Digital Subscriptions**

20.     To register for NFL.com, users sign up for an online newsletter. NFL.com users provide their personal information, including but not limited to their name, email address, and zip code. To register for NFL+, users provide NFL their first name, last name, date of birth, country, and (optionally) zip code. Upon information and belief, Defendant tracks the IP address utilized to initialize the subscription, thus linking an IP address with a specific individual. This allows for a host of data connections, which, when combined with other tracking technologies

---

[3] *See* Committee on the Judiciary, Subcommittee on Privacy, Technology and the Law, The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century, Senate Judiciary Committee Subcommittee on Privacy, Technology and the Law, https://www.judiciary.senate.gov/meetings/the-video-privacy-protection-act-protecting-viewer-privacy-in-the-21st-century (last visited Sept. 02, 2022).

described herein, allows Defendant to aggregate a great deal of information about subscribers, like Plaintiff. As the saying goes, "if you don't pay for the product, you are the product."

21.     National Football League operates a website in the U.S. accessible from a desktop and mobile device at NFL.com. It also offers the NFL App available for download on Android and iPhone devices.

22.     On information and belief, all digital subscribers provide Defendant with their IP address, which is a unique number assigned to all information technology connected devices, that informs Defendant as to subscribers' city, zip code and physical location. Further, any NFL+ subscriber who uses the NFL App provides Defendant with their unique device identification number, geolocation data, and other information.

23.     Additionally, digital subscribers may provide to Defendant the identifier on their mobile devices and/or cookies stored on their devices, as further described below.

24.     When opening an account, Defendant does not disclose to its digital subscribers that it will share their Personal Viewing Information with third parties, such as Facebook. Digital subscribers are also not asked to consent to such information sharing upon opening an account.

25.     After becoming a digital subscriber, viewers have access to a variety of NFL.com and NFL App Video Media on Defendant's digital platforms.

26.     Notably, once a digital subscriber signs in and watches NFL.com or NFL App Video Media, some of which is exclusive content to digital subscribers, the digital subscriber is not provided with any notification that their Personal Viewing Information is being shared. Similarly, Defendant also fails to obtain digital subscribers' written consent to collect their Personal Viewing Information "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer," as the VPPA requires.

**C.      Defendant Admits It Collects and Discloses Certain Personal Information of Digital
Subscribers to Third Parties But Fails to Advise It Discloses Personal Viewing
Information, as Required Under the VPPA.**

27.      The operative Privacy Policy for NFL.com states that it collects "Personal

Information" from its users:

> "…we may collect some or all of the following types of information when you
> register with or use our Services, sign up for contests or sweepstakes, participate
> in surveys, access various content or features, submit comments or content, use a
> send-to-a-friend feature, or directly contact us with questions or feedback:
> - o  Contact information, such as name, e-mail address, postal address,
>      and telephone number;
> - o  Unique identifiers, such as a user name or password;
> - o  Demographic information, such as gender;
> - o  Financial information, such as credit card or other payment
>      information;
> - o  Real-time Geolocation information;
> - o  Communications and marketing preferences;
> - o  Favorite team and other personal preferences
> - o  Photographs, if you provide a photograph of yourself to us
> - o  Search queries;
> - o  Comments and other information posted in our interactive online
>      forums;
> - o  Correspondence, waivers or acceptances and other information that
>      you send to us; and
> - o  Additional information as otherwise described to you in this
>      Policy, at the point of collection, or pursuant to your consent."

We also may collect certain information automatically when you visit or use the
Services, such as stadium WiFi networks, including:

> - o  Your Internet Protocol (IP) address, which is the number
>      automatically assigned to your computer whenever you access the
>      Internet and that can sometimes be used to derive your general
>      geographic area;
> - o  Your Media Access Control (MAC) address, which is a unique
>      identifier assigned to a network interface controller
> - o  Your device type or mobile carrier;
> - o  Other unique identifiers, including mobile device identification
>      numbers; and advertising identifiers (e.g., IDFA);
> - o  Your browser type and operating system;
> - o  Sites and apps you visited before and after visiting, or while using,
>      the Services;
> - o  Pages you view and links you click on within the Services;

o   Information collected through cookies, web beacons, Local Shared Objects, and other technologies, as described further below;

o   Information about your interactions with e-mail messages, such as the links clicked on and whether the messages were received, opened, or forwarded;

o   If you link your social media account to your NFL account we will receive information from those social media accounts in accordance with your settings on the social platform and their privacy policy;

o   Standard Server Log Information; and

o   Standard Network Traffic Information when you are connected to an NFL stadium's WiFi network."[4]

28.   Notably, neither NFL.com nor the NFL App discloses in its Privacy Policy that it automatically collects "Pages you view and links you click on within the Services…"[5]

27.   Importantly, nowhere in NFL.com's Terms of Service or Privacy Policy is it disclosed that Defendant will share digital subscribers' private and protected Personal Viewing Information with third parties, including Facebook.

**D.   How NFL.com and the NFL App Disseminates Digital Subscribers' Personal Viewing Information**

**1.   Tracking Pixels**

28.   Websites and apps use Facebook's pixel and SDK to collect information about user's devices and activities and send that to Facebook. Facebook then uses that information to show the user targeted ads.

29.   The Facebook tracking pixel, also known as a "tag" or "web beacon" among other names, is an invisible tool that tracks consumers' actions on Facebook advertisers' websites and reports them to Facebook. It is a version of the social plugin that gets "rendered" with code from Facebook. To obtain the code for the pixel, the website advertiser tells Facebook which website

---

[4] *See* NFL, NFL.com – Privacy Policy, *available at* https://www.nfl.com/legal/privacy/ (last visited Sept. 7, 2022).

[5] *See id.*

events it wants to track (*e.g.*, Video Media) and Facebook returns corresponding Facebook pixel code for the advertiser to incorporate into its website.

30.     Defendant installed the Facebook tracking pixel, which enables it to disclose Plaintiff's and Class Members' Personal Viewing Information to Facebook, because it benefits financially from the advertising and information services that stem from use of the pixel. When a NFL.com digital subscriber enters the website and watches Video Media on the website, the website sends to Facebook certain information about the viewer, including, but not limited to, their identity and the media content the digital subscriber watched. Specifically, NFL.com sends to Facebook the video content name, its URL, and, most notably, the viewers' Facebook ID.

31.     Similarly, the NFL App can share user data with Facebook, through the use of one or more of Facebook's SDKs.

**2.      Facebook ID ("FID")**

32.     An FID is a unique and persistent identifier that Facebook assigns to each user. With it, anyone ordinary person can look up the user's Facebook profile and name. When a Facebook user with one or more personally identifiable FID cookies on their browser views Video Media from NFL.com on the website or app, NFL.com or the NFL App, through its computer code, causes the digital subscribers identity and viewed Video Media to be transmitted to Facebook by the user's browser or App. This transmission is not the digital subscribers decision, but results from Defendant's purposeful use of its Facebook tracking pixel by incorporation of that pixel and code into NFL.com's website or NFL App. Defendant could easily program the website and app so that this information is not automatically transmitted to Facebook when a subscriber views Video Media. However, it is not Defendant's financial interest to do so because it benefits financially by providing this highly sought-after information.

33.     Notably, while Facebook can easily identify any individual on its Facebook platform with only their unique FID, so too can any ordinary person who comes into possession of an FID. Facebook admits as much on its website. Indeed, ordinary persons who come into possession of the FID can connect to any Facebook profile. Simply put, with only an FID and the video content name and URL – all of which Defendant knowingly and readily provides to Facebook without any consent from the digital subscribers – any ordinary person could learn the identity of the digital subscriber and the specific video or media content they requested on NFL.com.

34.     At all relevant times, Defendant knew that the Facebook pixel disclosed Personal Viewing Information to Facebook. This was evidenced from, among other things, the functionality of the pixel, including that it enabled NFL.com and the NFL App to show targeted advertising to its digital subscribers based on the products those digital subscriber's had previously viewed on the website or app, including Video Media consumption, for which Defendant received financial remuneration.

**E.    NFL.com Unlawfully Discloses Its Digital Subscribers' Personal Viewing Information to Facebook**

35.     Defendant maintains a vast digital database comprised of its digital subscribers' Personal Viewing Information, including the names and e-mail addresses of each digital subscriber and information reflecting the Video Media that each of its digital subscribers viewed.

36.     Defendant is not sharing anonymized, non-personally identifiable data with Facebook. To the contrary, the data it discloses is tied to unique identifiers that track specific Facebook users. Importantly, the recipient of the Personal Viewing Information – Facebook – receives the Personal Viewing Information as one data point. Defendant has thus monetized its database by disclosing its digital subscribers' Personal Viewing Information to Facebook in a

manner allowing it to make a direct connection – without the consent of its digital subscribers and to the detriment of their legally protected privacy rights.

37.    Critically, the Personal Viewing Information Defendant discloses to Facebook allows Facebook to build from scratch or cross-reference and add to the data it already has in their own detailed profiles for its own users, adding to its trove of personally identifiable data.

38.    These factual allegations are corroborated by publicly available evidence. For instance, as shown in the screenshot below, a user visits NFL.com and clicks on an article titled "Burton: Jalen Ramsey refusing to praise Bills ahead of Week 1 matchup" and watches the video in the article.



*Pictured above: The article titled "Burton: Jalen Ramsey refusing to praise Bills ahead of Week 1 matchup" (taken from NFL.com on or about September 8, 2022).*

39.     As demonstrated below, once the user clicks on and watches the video in the article, NFL.com sends the content name of the video the digital subscriber watched, the URL, and the digital subscriber's FID to Facebook.

**Request URL:** https://www.facebook.com/x/oauth/status?client_id=404205130228139&input_token&origin=1&redirect_uri=https%3A%2F%2Fwww.nfl.com%2Fvideos%2Fburton-jalen-ramsey-refusing-to-praise-bills-ahead-of-week-1-matchup&sdk=joey&wants_cookie_data=true

**Request Method:** GET

**Status Code:** 🟢 200

**Remote Address:** 157.240.2.35:443

**Referrer Policy:** strict-origin-when-cross-origin

▶ **Response Headers**                                                              (20)

▼ **Request Headers**

**:authority:** www.facebook.com

**:method:** GET

**:path:** /x/oauth/status?client_id=404205130228139&input_token&origin=1&redirect_uri=https%3A%2F%2Fwww.nfl.com%2Fvideos%2Fburton-jalen-ramsey-refusing-to-praise-bills-ahead-of-week-1-matchup&sdk=joey&wants_cookie_data=true

**:scheme:** https

**accept:** */*

**accept-encoding:** gzip, deflate, br

**accept-language:** en-US,en;q=0.9

**cookie:** datr=yMoDYisDUFneXJy_jphtjpuJ; sb=y8oDYuGCws0_dL4A78BrOshS; c_user=767858528; dpr=1.25; usida=eyJ2ZXIiOjEsImlkI joiQXJobGJ1bGI3d3kwciIsInRpbWUiOjE2NjIxMzUzNTd9; xs=31%3Ahpq3EXTJcmb6rw%3A2%3A1658853793%3A-1%3A2390%3A3AAcW5jDVmcDPO HpGZCFoXOANfyNGOvo3w3fIIBcfdlfY; fr=0kgxrDgVBBjIgSHGN.AWVE4L65HFLm1lYBG_strfvLOOI.BjF6WT.F6.AAA.0.0.BjF6dY.AWVVCpRJZg g

**origin:** https://www.nfl.com

**referer:** https://www.nfl.com/

**sec-ch-ua:** "Chromium";v="104", " Not A;Brand";v="99", "Google Chrome";v="104"

**sec-ch-ua-mobile:** ?0

**sec-ch-ua-platform:** "Windows"

**sec-fetch-dest:** empty

**sec-fetch-mode:** cors

**sec-fetch-site:** cross-site

*HTTP single communication session sent from the device to Facebook, reveals the video name, URL and the viewer's FID (c_user field)*

40.     As a result of Defendant's data compiling and sharing practices, Defendant has knowingly disclosed to Facebook for its own personal profit the Personal Viewing Information of Defendant's digital subscribers, together with additional sensitive personal information.

41.     Defendant does not seek its digital subscribers' prior written consent to the disclosure of their Personal Viewing Information (in writing or otherwise) and its customers remain unaware that their Personal Viewing Information and other sensitive data is being disclosed to Facebook.

42.     By disclosing its digital subscribers Personal Viewing Information to Facebook – which undeniably reveals their identity and the specific video materials they requested from Defendant's website – Defendant has intentionally and knowingly violated the VPPA.

**F.     Disclosing Personal Viewing Information is Not Necessary**

43.     Tracking pixels are not necessary for Defendant to operate NFL.com or the NFL App. They are deployed on Defendant's website and app for the sole purpose of enriching Defendant and Facebook.

44.     Even if an on-line news publication found it useful to integrate Facebook tracking pixels, Defendant is not required to disclose Personal Viewing Information to Facebook. In any event, if Defendant wanted to do so, it must first comply with the strict requirements of VPPA, which it failed to do.

**G.     Plaintiff's Experiences**

45.     Plaintiff Brandon Hughes has been a digital subscriber of NFL.com from 2020 to the present. Further, Plaintiff Hughes was a digital subscriber of NFL+ during, at least, August 2022. Plaintiff became a digital subscriber of Defendant by providing, among other information, his name, address, email address, IP address (which informs Defendant as to the city and zip code he resides in as well as his physical location), device ID, and any cookies and other

demographic, device, geolocation, and other data associated with his devices. As part of his subscription, he receives or received emails and other communications from NFL.com, as well as access to content and features only available to NFL+ subscribers.

46.     Plaintiff has had a Facebook account since approximately 2006. From 2006 to the present, Plaintiff viewed Video Media via NFL.com website and App. Some of the viewed content was only provided through the NFL App to NFL+ subscribers.

47.     Plaintiff never consented, agreed, authorized, or otherwise permitted Defendant to disclose his Personal Viewing Information to Facebook. Plaintiff has never been provided any written notice that Defendant discloses its digital subscribers' Personal Viewing Information, or any means of opting out of such disclosures of his Personal Viewing Information. Defendant nonetheless knowingly disclosed Plaintiff's Personal Viewing Information to Facebook.

48.     Because Plaintiff is entitled by law to privacy in his Personal Viewing Information, Defendant's disclosure of his Personal Viewing Information deprived Plaintiff of the full set of benefits to which he is entitled. Plaintiff did not discover that Defendant disclosed his Personal Viewing Information to Facebook until August 2022.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action individually and on behalf of all others similarly situated as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class (the "Class"):

> All persons in the United States with a digital subscription to an online website or product owned and/or operated by Defendant that had their Personal Viewing Information disclosed to Facebook by Defendant.

50.     Excluded from the Class are Defendant, their past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns and any entity in which any of

them have a controlling interest, as well as all judicial officers assigned to this case as defined in 28 USC § 455(b) and their immediate families.

51.     <u>Numerosity</u>. Members of the Class are so numerous and geographically dispersed that joinder of all members of the Class is impracticable. Plaintiff believes that there are hundreds of thousands of members of the Class widely dispersed throughout the United States. Class members can be identified from Defendant's records and non-party Facebook's records.

52.     <u>Typicality</u>. Plaintiff's claims are typical of the claims of members of the Class. Plaintiff and members of the Class were harmed by the same wrongful conduct by Defendant in that Defendant caused Personal Viewing Information to be disclosed to Facebook without obtaining express written consent. his claims are based on the same legal theories as the claims of other Class members.

53.     <u>Adequacy</u>. Plaintiff will fairly and adequately protect and represent the interests of the members of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Class. Plaintiff is represented by counsel with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically.

54.     <u>Commonality</u>. Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct. Questions of law and fact common to the Classes include:

     a.     Whether Defendant knowingly disclosed Class members' Personal Viewing Information to Facebook;

b.    Whether the information disclosed to Facebook concerning Class members' Personal Viewing Information constitutes personally identifiable information under the VPPA;

c.    Whether Defendant's disclosure of Class members' Personal Viewing Information to Facebook was knowing under the VPPA;

d.    Whether Class members consented to Defendant's disclosure of their Personal Viewing Information to Facebook in the manner required by 18 U.S.C. § 2710(b)(2)(B); and

e.    Whether the Class is entitled to damages as a result of Defendant's conduct.

55.    Superiority. Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action. Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

**CLAIM FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710**

56.    Plaintiff incorporates the preceding paragraphs by reference as if fully set forth herein.

57.    The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" concerning any consumer to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C § 2710.

58.     As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials."

59.     Defendant is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce.

60.     As defined in 18 U.S.C. § 2710(a)(3), "personally-identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

61.     Defendant knowingly caused Personal Viewing Information, including FIDs, concerning Plaintiff and Class members to be disclosed to Facebook. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified each Plaintiff and Class member to Facebook as an individual who viewed NFL.com Video Media, including the specific video materials requested from the website.

62.     As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged in the preceding paragraphs, Plaintiff subscribed to a digital NFL.com newsletter, as well as NFL+, as digital subscription service offered by Defendant that provides exclusive Video Media content to the digital subscriber's desktop, tablet, and mobile device. Plaintiff is thus a "consumer" under this definition.

63.     As set forth in 18 U.S.C. § 27109(b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure

is sought or given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner." Defendant failed to obtain informed, written consent under this definition.

64.     In addition, the VPPA creates an opt-out right for consumers in 18 U.S.C. § 2710(2)(B)(iii). It requires video tape service providers to also "provide[] an opportunity for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." Defendant failed to provide an opportunity to opt out as required by the VPPA.

65.     Defendant knew that these disclosures identified Plaintiff and Class members to Facebook. Defendant also knew that Plaintiff's and Class members' Personal Viewing Information was disclosed to Facebook because, inter alia, Defendant chose, programmed, and intended for Facebook to receive the video content name, its URL, and, most notably, the digital subscribers' FID.

66.     By disclosing Plaintiff's and the Class's Personal Viewing Information, Defendant violated Plaintiff's and the Class members' statutorily protected right to privacy in their video-watching habits. *See* 18 U.S.C. § 2710(c).

67.     As a result of the above violations, Defendant is liable to the Plaintiff and other Class members for actual damages related to their loss of privacy in an amount to be determined at trial or alternatively for "liquidated damages not less than $2,500 per plaintiff." Under the statute, Defendant is also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by the Defendant in the future.

## VII.    RELIEF REQUESTED

68.    Accordingly, Plaintiff, individually and on behalf of the proposed Class,

respectfully requests that this court:

a.    Determine that this action may be maintained as a class action pursuant to Fed R. Civ. P. 23(a), (b)(2), and (b)(3) and declare Plaintiff as the representative of the Class and Plaintiff's Counsel as Class Counsel;

b.    For an order declaring that Defendant's conduct as described herein violates the federal VPPA, 18 U.S.C. § 2710(c)(2)(D);

c.    For Defendant to pay $2,500.00 to Plaintiff and each Class member, as provided by the VPPA, 18 U.S.C. § 2710(c)(2)(A);

d.    For punitive damages, as warranted, in an amount to be determined at trial, 18 U.S.C. § 2710(c)(2)(B);

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For injunctive relief as pleaded or as the Court may deem proper; and

h.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit, 18 U.S.C. § 2710(c)(2)(C).

## <u>JURY DEMAND</u>

69.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff, individually

and on behalf of the proposed Class, demands a trial by jury on all issues so triable.


Dated: August 11, 2023                    Respectfully Submitted:

                                          By: */s/ Michael L. Murphy*
                                          Michael L. Murphy (DC 480163)
                                          **BAILEY & GLASSER LLP**
                                          1055 Thomas Jefferson Street NW
                                          Suite 540
                                          Washington, DC 20007
                                          T: 202.494.3531
                                          mmurphy@baileyglasser.com

Brandon M. Wise – IL Bar # 6319580*
**PEIFFER WOLF CARR**
**KANE CONWAY & WISE, LLP**
73 W. Monroe, 5th Floor
Chicago, IL 60604
T: 312-444-0734
bwise@peifferwolf.com

*pro hac vice*

*Counsel for Plaintiff and the Putative Class*