UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRANDON HUGHES, individually and on behalf of all others similarly situated,

                Plaintiff,

-against-

NATIONAL FOOTBALL LEAGUE,

                Defendant.

Case No. 1:22-cv-10743 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Brandon Hughes ("Plaintiff") sues the National Football League (the "NFL" or "Defendant") under the Video Privacy Protection Act (the "VPPA"), 18 U.S.C. § 2710. Dkt. 79 (the "Second Amended Complaint" or "SAC"). Defendant moves to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6). Dkts. 84 ("Br."), 89 ("Reply"). Plaintiff opposes Defendant's motion. Dkt. 86 ("Opp."). Plaintiff also asks the Court to stay this case pending the Second Circuit's resolution of the appeal of *Salazar v. National Basketball Ass'n*, 685 F. Supp. 3d 232 (S.D.N.Y. 2023), *argued*, No. 23-1147 (2d Cir. Apr. 2, 2024). Opp. at 5-6. Defendant opposes a stay. Dkt. 88.

For the following reasons, the Court denies Plaintiff's request to stay this case, denies Defendant's motion to dismiss under Rule 12(b)(1), and grants Defendant's motion to dismiss under Rule 12(b)(6).

BACKGROUND

### I. Factual Allegations

The Court accepts the factual allegations in the Second Amended Complaint as true and draws all reasonable inferences in Plaintiff's favor. *See Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024). The Court also considers materials incorporated by reference in the Second

1

Amended Complaint, integral to the Second Amended Complaint, or subject to judicial notice. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

### A. NFL.com, the NFL App, and NFL+

The NFL is a major American sports league headquartered in New York. SAC ¶ 13. It operates three similarly named products or services relevant here: a website called NFL.com, a phone application called the NFL App, and a digital subscription called NFL+. *Id.* ¶¶ 13, 21, 65. On NFL.com and the NFL App, users can watch video content. *Id.* ¶ 13. NFL+ offers access to exclusive video content on a subscriber's desktop, tablet, and mobile device. *Id.* ¶ 65. Although not expressly alleged, *see generally id.*, the parties agree that the video content available on NFL+ includes both live and prerecorded content, *see* Br. at 4; Opp. at 10-11.

An individual may register for NFL.com by signing up for an online newsletter. SAC ¶ 20. To do so, an individual provides personal information including her name, email address, and ZIP code. *Id.* To register for NFL+, a user must provide her first name, last name, date of birth, and country; she also has the option of providing her ZIP code. *Id.* Defendant tracks the IP address used to initiate a subscription to NFL.com or NFL+, thus linking the IP address – and the corresponding physical location – with a specific individual. *Id.* ¶¶ 20, 22. Also, any NFL+ subscriber that uses the NFL App provides Defendant with her unique device-identification number, geolocation data, and other information. *Id.* ¶ 22.

NFL.com has a privacy policy. *Id.* ¶ 27; *see* ECF No. 83-5 (the "Privacy Policy" in effect at the relevant time). The Privacy Policy states that Defendant "may collect" certain "types of information when you register with or use our Services . . . [or] access various content or features," including "[c]ontact information," "[d]emographic information," and "[r]eal-time [g]eolocation information." Privacy Policy § 1; SAC ¶ 27. The Privacy Policy also states that Defendant "may

2

use" this information "for a variety of purposes" and provided examples of such uses. Privacy Policy § 2.

NFL.com also has a terms-and-conditions agreement. Dkt. 83-4 (the "Agreement"). Section 19 of the Agreement is captioned "Choice of Law, Arbitration, and Class Action Waiver." *Id.* § 19. It states, among other things, that:

> Any proceedings to resolve or litigate any dispute will be conducted solely on an individual basis. Neither you nor the NFL will seek to have any dispute heard as a class action or in any other proceeding in which either party acts or proposes to act in a representative capacity. No arbitration or proceeding will be combined with another without the prior written consent of all parties to all affected arbitrations or proceedings.

*Id.* (further capitalization omitted).

### B. Defendant's Data Collection and Disclosure

Defendant collects and shares the data and personal information of users of NFL.com and the NFL App with third parties through cookies, software-development kits ("SDKs"), and tracking pixels. SAC ¶ 3. As pertinent here, Plaintiff alleges that Defendant installed Facebook's tracking pixel (the "Facebook Pixel") on NFL.com and the NFL App. *Id.* ¶¶ 4, 35. When a digital subscriber enters NFL.com or the NFL App and watches a video, the Pixel sends certain information to Facebook, including the name of the video, its URL, and the viewer's Facebook identification number (the "FID"). *Id.* ¶¶ 4, 33, 35; *see id.* ¶ 35 ("An FID is a unique and persistent identifier that Facebook assigns to each user. With it, anyone ordinary person [sic] can look up the user's Facebook profile and name."). "Similarly, the NFL App can share user data with Facebook, through the use of one or more of Facebook's SDKs." *Id.* ¶ 34.

Facebook uses the information obtained through the Pixel to show targeted advertisements. *Id.* ¶ 31. Defendant purposefully incorporated the Pixel code on NFL.com and the NFL App, knew that the Pixel would disclose information to Facebook, and financially benefitted from disclosing

3

this information to Facebook. *Id.* ¶¶ 33, 35, 39, 45. The information transmitted to Facebook is not anonymized, and thus Facebook can either add the data to the information it already has for specific users or use the data to generate new user profiles. *Id.* ¶¶ 39-40.

### C. Plaintiff's Use of NFL.com, the NFL App, and NFL+

Plaintiff, an Illinois resident, has been a digital subscriber of NFL.com from 2020 to the present. *Id.* ¶¶ 12, 48. He has had a Facebook account since 2006. *Id.* ¶ 12. By virtue of his NFL.com digital subscription, Plaintiff receives emails and other communications from Defendant. *Id.* ¶ 48. Also, "[d]uring the relevant time period," Plaintiff "has used his NFL.com digital subscription to view Video Media through NFL.com and the NFL App." *Id.* ¶ 12. When watching videos on NFL.com, Plaintiff was logged into his Facebook account; when watching videos on the NFL App, Plaintiff had the Facebook mobile app also installed on his phone. *Id.* Consequently, when Plaintiff watched videos on either platform, "Plaintiff's Personal Viewing Information was disclosed to Facebook." *Id.*; *see id.* at 1 (defining "Personal Viewing Information" as including a user's FID, "the computer file containing video," and the "corresponding URL viewed").

Plaintiff "was a digital subscriber of NFL+ during, at least, August 2022." *Id.* ¶ 48. Through his NFL+ subscription, Plaintiff received "access to content and features available only to NFL+ subscribers." *Id.* Plaintiff viewed an unidentified number of videos that were "only provided through the NFL App to NFL+ subscribers." *Id.* ¶ 49.

"Plaintiff never gave Defendant express written consent to disclose his Personal Viewing Information." *Id.* ¶ 12. "Plaintiff did not discover that Defendant disclosed his Personal Viewing Information to Facebook until August 2022." *Id.* ¶ 51.

## II. Procedural History

This litigation kicked off in the Northern District of Illinois on September 14, 2022. Dkt. 1. On January 25, 2023, after the case had been transferred to this District, Dkt. 19, the Court granted

4

Plaintiff's unopposed motion to file an amended complaint, Dkt. 30; *see* Dkt. 40 (the "First Amended Complaint"). On March 2, 2023, Defendant moved to dismiss the First Amended Complaint. Dkt. 44. That motion was fully briefed on April 6, 2023. Dkt. 63.

On August 7, 2023, the Court granted a motion to dismiss in *Salazar*, a case involving a similar claim under the VPPA. 685 F. Supp. 3d at 235. Four days later, Plaintiff requested leave to amend in this case. Dkt. 73. The Court granted this request over Defendant's opposition and denied as moot Defendant's motion to dismiss the First Amended Complaint. *Hughes v. Nat'l Football League*, No. 22-cv-10743 (JLR), 2023 WL 8039262, at *1 (S.D.N.Y. Nov. 20, 2023).

Plaintiff filed the Second Amended Complaint on November 27, 2023. SAC. He asserts a single claim for relief under the VPPA. *Id.* ¶¶ 59-70. He also seeks to represent a proposed class of "[a]ll persons in the United States with a digital subscription to an online website or product owned and/or operated by Defendant that had their Personal Viewing Information disclosed to Facebook by Defendant." *Id.* ¶ 52; *see id.* ¶ 71 (requesting both individual and class relief). Defendant moved to dismiss the Second Amended Complaint on December 18, 2023. Br. The motion is fully briefed. Opp.; Reply; *see also* Dkt. 90 (Defendant's submission of supplemental authority).

## LEGAL STANDARD

"A district court properly dismisses an action under [Rule] 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when the plaintiff lacks constitutional standing to bring the action." *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023) (ellipsis, quotation marks, and citation omitted). To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757-58 (2014) (citation omitted). On a motion to dismiss under Rule 12(b)(1) or Rule 12(b)(6), a court accepts the complaint's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Citizens*

5

*United to Protect Our Neighborhoods v. Village of Chestnut Ridge*, 98 F.4th 386, 391 (2d Cir. 2024) (Rule 12(b)(1)); *Syeed v. Bloomberg L.P.*, 58 F.4th 64, 67 (2d Cir. 2023) (Rule 12(b)(6)).

## DISCUSSION

### I. Stay

As a threshold matter, the Court denies Plaintiff's request to stay this case pending the Second Circuit's disposition of the *Salazar* appeal.

A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Relevant considerations include "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (citation omitted). "Of course, these factors are guides to the district court's discretion, not a rigid test requiring mechanical operation." *Press v. Primavera*, No. 21-cv-10971 (JLR), 2024 WL 1621203, at *3 (S.D.N.Y. Apr. 15, 2024). "The proponent of a stay bears the burden of establishing its need." *Clinton*, 520 U.S. at 708.

Plaintiff notes that some issues raised in the *Salazar* appeal are also implicated in this case, and that other courts in this District have stayed VPPA cases pending the Second Circuit's decision in *Salazar*. *See* Opp. at 5-6; *see also Addi v. Int'l Bus. Machs., Inc.*, No. 23-cv-05203 (NSR), 2024 WL 2802863, at *5 (S.D.N.Y. May 31, 2024) (collecting cases). According to Plaintiff, a stay would provide "clarity on the scope of the VPPA before engaging in potentially expensive – and uncertain – litigation." Opp. at 6 (citation omitted). To be sure, "[t]his Court has authority to stay proceedings pending disposition of another case that could affect the outcome." *Pry v. Auto-Chlor Sys., LLC*, No. 23-cv-04541 (DEH), 2024 WL 3728981, at *1 (S.D.N.Y. Aug. 8, 2024) (citation

omitted). Nevertheless, Defendant's motion to dismiss the Second Amended Complaint has been fully briefed for some time and, more importantly, raises several issues that are not implicated in the *Salazar* appeal. The Court finds that the interests of Defendant, the Court, and the public in resolving cases in a reasonably timely fashion outweigh countervailing considerations. *See Press*, 2024 WL 1621203, at *5. Therefore, the Court denies Plaintiff's stay request.

## II. Standing

The Court turns next to Defendant's Rule 12(b)(1) motion challenging Plaintiff's standing. To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Invoking *TransUnion*, Defendant asserts that Plaintiff cannot "identify a close historical or common-law analogue for his asserted injury that has been traditionally recognized as a basis for suit." Br. at 11 (brackets, quotation marks, and citation omitted). In *Salazar*, however, the Court held that VPPA claims of this sort are sufficiently analogous to the tort of intrusion upon seclusion to satisfy *TransUnion*. *See* 685 F. Supp. 3d at 239-42. The Court's view on this issue has not changed.

Defendant makes one argument that was not raised in *Salazar* and that the Court therefore addresses now. According to Defendant, Plaintiff "consented to the alleged disclosures through his notice of, and agreement to, Facebook's policies and the NFL's Privacy Policy, both of which alerted him to the cookie-based tracking and ad customization technologies he now complains of." Br. at 12. In turn, Defendant argues that a "disclosure to which an individual consented is not a harm that is traditionally recognized as giving rise to a viable tort suit." *Id.* (quotation marks omitted). "Rather, consent provides an 'absolute privilege' from traditional privacy torts." *Id.* (quoting Restatement (Second) of Torts § 652F cmt. b (Am. L. Inst. 1977)).

7

This argument does not advance the ball.  It is true that consent may provide an affirmative defense to a privacy tort.  *See, e.g.*, *Lewis v. LeGrow*, 670 N.W.2d 675, 688 (Mich. Ct. App. 2003) (under Michigan law, "there can be no invasion of privacy under the theory of intrusion upon the seclusion" if the plaintiff "consented to [the] defendant's intrusion"); *Noble v. Town Sports Int'l, Inc.*, 707 N.Y.S.2d 89, 90 (1st Dep't 2000) (models "provided written consent, without limitation, to the use and reuse of the photographs for advertising purposes . . . , thus waiving any invasion of privacy claim" under New York statute); *Anderson v. Low Rent Hous. Comm'n of Muscatine*, 304 N.W.2d 239, 248 (Iowa 1981) (under Iowa law, "waiver and consent" are "affirmative defenses" to "the tort of invasion of privacy").  But Plaintiff does not allege that he consented to Defendant sharing his personally identifying information with Facebook; in fact, he alleges the opposite.  *See, e.g.*, SAC ¶ 12 ("Plaintiff never gave Defendant express written consent to disclose his Personal Viewing Information.").  Moreover, if Plaintiff indeed validly consented to Defendant sharing his personally identifying information with Facebook (something that is not obvious from the evidence highlighted by Defendant), that fact could support an affirmative defense to an intrusion-on-seclusion claim and, potentially, a VPPA claim, *see, e.g.*, *Anderson*, 304 N.W.2d at 248; *Feldman v. Star Trib. Media Co.*, 659 F. Supp. 3d 1006, 1023 (D. Minn. 2023) (18 U.S.C. § 2710(b)(2)(B), which establishes a safe harbor for VPPA claims based on a plaintiff's consent, "seems like an affirmative defense that the [defendant] bears the burden to plead and prove"), but it does not mean that Plaintiff lacks standing to assert a VPPA claim at this juncture, *see, e.g.*, *Pileggi v. Wash. Newspaper Publ'g Co.*, No. 23-cv-00345, 2024 WL 324121, at *7-8 (D.D.C. Jan. 29, 2024) (rejecting defendant's argument that plaintiff, by continuing to visit website with publicly accessible privacy policy, impliedly consented to disclosure and therefore lacked standing to assert VPPA claim); *cf. Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1118 n.7 (9th Cir. 2022) (in case brought under the Telephone Consumer Protection Act (the "TCPA"), defendant argued that plaintiffs lacked

8

standing because they consented to defendant's calls; court rejected this argument because "[e]xpress consent is an affirmative defense" under the TCPA, and "determining whether [p]laintiffs consented to [defendant]'s calls require[d] an analysis of the merits" of plaintiffs' TCPA claim (ellipsis and citation omitted)).

Thus, the Court denies Defendant's motion to dismiss under Rule 12(b)(1).

**III.    Merits**

In seeking dismissal under Rule 12(b)(6) for failure to state a claim, Defendant argues that Plaintiff fails to allege facts to support three elements of his claim: (1) that Plaintiff is a "consumer" of a "video tape service provider"; (2) that Defendant "disclose[d]" "personally identifying information"; and (3) that this disclosure was made "knowingly." Br. at 12 (brackets in original) (quoting 18 U.S.C. § 2710). The Court agrees with Defendant on the first point; it does not address the other two.

The VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Neither party asserts that Plaintiff is a renter or purchaser. Instead, the parties focus on whether Plaintiff is a subscriber.

For substantially the same reasons stated in *Salazar*, Plaintiff does not plausibly allege that his NFL.com subscription "render[s] him a consumer of goods or services from a video tape service provider under the VPPA." 685 F. Supp. 3d at 246. Unlike in *Salazar*, however, Plaintiff asserts an additional basis for qualifying as a "subscriber" and, thus, as a "consumer": his subscription to NFL+. SAC ¶ 65. Plaintiff alleges that as part of his subscription to NFL+, he received "access to content and features only available to NFL+ subscribers." *Id.* ¶ 48. Plaintiff also claims that he watched videos through the NFL App, and that "[s]ome of the viewed content was only provided through the NFL App to NFL+ subscribers." *Id.* ¶ 49. Thus, Plaintiff sufficiently alleges that "the video content he accessed was exclusive to a subscribership." 685 F. Supp. 3d at 245. These

allegations, however, establish only that Plaintiff was a "consumer"; they do not establish that Plaintiff was a consumer of "a video tape service provider."

Defendant argues that Plaintiff is not a consumer of a "video tape service provider" because he "does not allege he viewed any *prerecorded* video content whatsoever through his subscription" to NFL+. Br. at 15-17; *see* 18 U.S.C. § 2710(a)(4) (under the VPPA, "the term 'video tape service provider' means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials"). Plaintiff, in response, "readily concedes" that the VPPA applies only to prerecorded content. Opp. at 11. But Plaintiff does not identify any allegation in the Second Amended Complaint asserting that he viewed prerecorded content through NFL+. *See id.* Instead, he argues that the Second Amended Complaint's allegation that he watched videos through NFL+, combined with the undisputed fact that NFL+ has prerecorded content, is sufficient to establish that he was a consumer of a "video tape service provider" for purposes of a motion to dismiss. *See id.* at 10-12.

Even accepting the non-pleaded fact that NFL+ has prerecorded content (to which the parties nonetheless appear to agree), the Court agrees with Defendant that Plaintiff, by failing to plead that he viewed prerecorded video content through NFL+, has insufficiently alleged that he was a consumer of a "video tape service provider." Although a plaintiff need not "allege the specific videos he watched to state a claim under the VPPA," *Frawley v. Nexstar Media Grp. Inc.*, No. 23-cv-02197, 2024 WL 3798073, at *6 (N.D. Tex. July 22, 2024), or "plead the circumstances of every alleged disclosure with particularity," *Campos v. Tubi, Inc.*, --- F. Supp. 3d ----, 2024 WL 496234, at *9 (N.D. Ill. Feb. 8, 2024), Plaintiff does not allege that he watched *any* prerecorded videos via NFL+ at all during the brief period where he was a subscriber to NFL+. This failure is fatal to the Second Amended Complaint. *See, e.g.*, *Solomon v. Flipps Media, Inc.*, No. 22-cv-05508 (JMA), 2023 WL 6390055, at *5 (E.D.N.Y. Sept. 30, 2023) (granting motion to dismiss where

plaintiff "never explicitly allege[d] that she actually accessed [any] 'prerecorded' video on [d]efendant's site"); *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 851 (N.D. Cal. 2022) (granting motion to dismiss where complaint "include[d] numerous references to 'videos' and 'video content,' but d[id] not specify whether they were broadcast live or prerecorded and available on demand," and "[n]othing in the complaint suggest[ed] an inference one way or the other on that question"); *cf. Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 157, 167 (S.D.N.Y. 2023) (denying motion to dismiss on this ground where plaintiff expressly alleged that she used her subscription to view prerecorded videos, although granting dismissal on another ground); *Czarnionka v. Epoch Times Ass'n*, No. 22-cv-06348 (AKH), 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022) (denying motion to dismiss where plaintiff alleged that the website had prerecorded videos, and where there was no indication that the website had any live videos).

## IV. Class-Action Waiver

As noted, Plaintiff asserts a VPPA claim on behalf of not only himself but also a putative class. SAC ¶ 52. Defendant contends that "[e]ven if the Court declines to dismiss the SAC in its entirety, it should nevertheless dismiss the class claims with prejudice." Br. at 23.

Where, as here, a named plaintiff's claim is dismissed prior to class certification, the Court lacks jurisdiction over any putative class-action claims. *See Martin v. New Am. Cinema Grp., Inc.*, No. 22-cv-05982 (JLR), 2023 WL 2024672, at *9 (S.D.N.Y. Feb. 15, 2023) (collecting cases). Thus, having dismissed Plaintiff's individual VPPA claim, the Court dismisses the putative VPPA class-action claim without prejudice. *See Miller v. Brightstar Asia, Inc.*, 43 F.4th 112, 126 (2d Cir. 2022) ("A dismissal for lack of jurisdiction must be without prejudice rather than with prejudice." (citation omitted)). The Court does not reach the parties' other arguments about the applicability of the class-action waiver in Section 19 of the Agreement.

11

## CONCLUSION

Plaintiff's request to stay is DENIED, Defendant's motion to dismiss under Rule 12(b)(1) is DENIED, and Defendant's motion to dismiss under Rule 12(b)(6) is GRANTED. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 82 and CLOSE the case.

Dated: September 5, 2024  
       New York, New York

SO ORDERED.

*Jennifer Rochon*  
JENNIFER L. ROCHON  
United States District Judge